FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2016

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY JOSHUA MORGAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | No.   2:15-CV-0014-SMJ<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGEMENT MOTION** |

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 12 & 14. Plaintiff Timothy Joshua Morgan appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 12. Plaintiff contends the ALJ improperly (1) discredited his subjective complaints, (2) found his mental impairments did not meet Listing 12.05(C), and discredited certain medical opinions. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court affirms the ALJ's decision and therefore denies Plaintiff's motion and grants the Commissioner's motion.

**A. Procedural History**

Plaintiff filed his application on July 31, 2013. Plaintiff alleges that his disability began on October 12, 1985. ECF No. 9 at 155. A hearing was held before an ALJ on June 29, 2014, at which Plaintiff was represented by counsel. Tr. 41–78. At the

hearing, the ALJ received testimony from medical experts, James M. Hayne, M.D.,

and R. Thomas McKnight, Ph.D, and vocational expert J. Lawson. Tr. 41–78. On August 8, 2014, the ALJ issued a decision finding Plaintiff was not disabled. Tr. 22–46. The Appeals Council denied Plaintiff's request for review. Tr. 1–7. Plaintiff timely appealed.

**B. Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**C. Standard of Review**

On review, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The Court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as

a whole to support the decision.  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**D. Analysis**

*I.   Plaintiff's Subjective Complaints*

Plaintiff argues that the ALJ's credibility finding was erroneous because the ALJ improperly discredited Plaintiff's subjective complaints. The Court disagrees and finds that the ALJ satisfied the relevant legal standard.

Where, as here, the objective medical evidence establishes an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." *Tommasetti*, 533 F.3d at 1039.

There are numerous factors that an ALJ may consider in weighing a claimant's credibility. In *Lingenfelter v. Astrue*, the Ninth Circuit provided some examples of acceptable points of inquiry: (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence. 504 F.3d 1028, 1040 (9th Cir. 2007). The Court has made clear that as long as the ALJ's findings are supported by substantial evidence, "the court may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Plaintiff alleged having debilitating mental symptoms, including difficulty with memory, difficulty socializing, and issues with seizures. Tr. 29. The ALJ noted that the "[w]hile the claimant has alleged concern over his seizures, his activities

indicate that his seizures are more controlled than alleged." Tr. 29. To this point, the ALJ considered that the record indicated that his seizures were infrequent and caused by stress. Tr. 29. For instance, in November 2013, Plaintiff was examined at Sacred Heart Medical Center with complaints of experiencing three seizures earlier in the morning. Tr. 346. Scott Marquis, M.D., reported that Plaintiff's seizures were probably due to his reports of not eating or drinking much combined with poor sleep. Tr. 347. In January 2014, Plaintiff reported that he does not take his seizure medication regularly and that all of his seizures have been caused by stress. Tr. 399. Plaintiff also reported improvement with medication. Tr. 399. Impairments "that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." W*arre ex rel. E.T. IV v. Comm'r of the Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006).

Additionally, despite Plaintiff's allegations of debilitating physical and mental symptoms, the record demonstrates he shopped in grocery stores, prepared his own simple meals, and performed household chores. Tr. 27. An ALJ "may consider many factors in weighing a claimant's credibility," including "the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039; *Bray*, 554 F.3d at 1227 (properly discrediting a claimant's allegations of debilitating symptoms when the claimant "led an active lifestyle, including cleaning, cooking, walking [his] dogs, and driving to appointments").

Further, an ALJ may discredit a claimant's allegations if the claimant has not "been a reliable historian, presenting conflicting information about [his] drug and alcohol usage." *Thomas*, 278 F.3d at 959. The ALJ pointed out that Plaintiff reported to Dr. Everhart that he has never used drugs or experimented with any drugs. Tr. 32, 251. Plaintiff also denied drug usage to his treatment providers. Tr. 303. However, the ALJ noted that Plaintiff reported to treating staff in an emergency room that he was stabbed by his drug dealer due to a $6,000.00 debt. Tr. 32, 1237.

Inconsistency shown by Plaintiff's activities and assertions regarding the origin of his injuries and its severity provide sufficient support for the ALJ finding that the Plaintiff was not credible in his subjective testimony.  Indeed, the ALJ provided ample specific, clear and convincing evidence for this determination. Accordingly, the Court will not disturb the ALJ's findings.

*II. Mental Impairments Listing 12.05(C)*

Plaintiff argues the ALJ improperly found he did not meet Listing 12.05(C), which addresses the impairment of mental retardation.

To meet Listing 12.05(C), a claimant must demonstrate: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning with an onset before age 22; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) a physical or other mental impairment imposing an additional and

significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, app. 1, §12.05, 12.05(C).  Here, the ALJ found Plaintiff's mental impairments did not meet Listing 12.05(C) because the record did not contain a valid IQ score. Tr. 26–28.

To satisfy the requirements of Listing 12.05(C), the IQ scores must be "valid." In considering the validity of a test result, an ALJ should note and resolve any discrepancies between formal test results and the individual's customary behavior and daily activities." 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00(D)(5)(c). An ALJ may reject results of an IQ test based on conflicting evidence and questions regarding claimant's credibility. *See Strunk*, 732 F.2d at 1360.

Here, the ALJ considered that examining psychologist Dr. Everhart, reported Plaintiff had a full-scale IQ score of 61. Tr. 25–26, 261. The ALJ found the IQ scores in question were not valid because another psychologist, Dr. McKnight, also cautioned that factors such as effort and motivation likely have adversely affected the test results. Tr. 25–26. The ALJ accepted Dr. McKnight's testimony that Plaintiff's difficulties were better expressed as a cognitive disorder and that the record did not support a diagnosis of mild mental retardation. Tr. 25.

The ALJ also noted discrepancies between the test results and Plaintiff's customary behavior and daily activities. Dr. Everhart opined, "[b]ased on the

mental status examination, his attention, concentration, and intellectual ability appear to be within normal limits." Tr. 262. Dr. Everhart further noted that Plaintiff had good persistence, remained on task, and was not easily distracted. Additionally, Plaintiff reported to Dr. Everhart that he does simple cooking, takes out the trash, and goes shopping.

The ALJ also considered Plaintiff's own testimony regarding his ability to read a newspaper and perform simple math, such as addition, subtraction, and multiplication, were contrary to these low scores. Tr. 25–26. Moreover, the ALJ found that Plaintiff's articulate use of words and the breadth of his vocabulary during testimony contradict his extremely low IQ testing results. Tr. 25–26.

Consultative examiner John Arnold, Ph.D., also found the mild mental retardation diagnosis incredible. He opined that "from this examiner's point of view, the last diagnosis [mild mental retardation] is questionable. Even though his WAIS-IV Full Scale IQ score was 61 plus or minus, suggesting mild mental retardation, his quotes from other mental health intake interviews, at face value, appear more thoughtful and intelligent." Tr. 2074.

Based on the forgoing reasons, the Court finds that the ALJ properly concluded, based on substantial evidence, Plaintiff's impairment did not meet or medically equal Listing 12.05(C).

III. _Medical Opinions_

Plaintiff challenges the ALJ's evaluation of Dr. Everhart's opinion regarding her assessment of his functional limitations.

The ALJ assigned significant weight to the findings and opinions of Dr. Everhart, finding her assessment of Plaintiff was consistent with the overall record. Tr. 32–33. However, Dr. Everhart's statement that Plaintiff "may have difficulties maintaining regular attendance" was given little weight because the ALJ found that it was speculative and not based on her exanimation findings. Tr. 33.

The ALJ also afforded less weight to Dr. Everhart's GAF score of 50. Tr. 32, 262. The GAF score is a "rough estimate" of an individual's psychological, social, and occupational functioning, and is used to assess the need for treatment. *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). It is not an appropriate methodology for assessing the severity of a mental impairment or assessing residual functioning capacity in the context of adjudicating disability for Social Security claim purposes because it "does not have a direct correlation to the severity requirements in our mental disorder listings." *See* 65 Fed. Reg. 50, 746–50 (Aug. 21, 2000).

That the GAF scale's lack of probative value is also evident by the fact it is no longer included in the most recent edition of the diagnostic and statistical manual

"for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013).

In regard to the GAF score, the ALJ stated it was not clear whether the score was based on symptoms or actual functioning and declined to adopt the low GAF scores. Tr. 32–33. The ALJ's interpretation is reasonable. Plaintiff's alternative interpretation of the evidence is insufficient to overturn the ALJ's findings. Even where evidence "exists to support more than one rational interpretation, the Court must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193.

**E. Conclusion**

In summary, the Court finds the record contains substantial evidence from which the ALJ properly concluded, when applying the correct legal standards that Timothy Joshua Morgan does not qualify for benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. **JUDGMENT** is to be entered in the Commissioner's favor.

4. The case shall be **CLOSED**.

1    **IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and

2    provide copies to all counsel.

3           **DATED** this 31st day of March 2016.

4

5                              _____
                              SALVADOR MENDOZA, JR.
6                              United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20